UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIMBERLY MARIE POLES,

        Plaintiff,  **17cv6189(MAT)**
               **DECISION AND ORDER**
   -vs-

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security[1],

        Defendant.

---

**I. Introduction**

Represented by counsel, Kimberly Marie Poles ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "defendant"), denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. Procedural History

Plaintiff protectively filed for SSI benefits on June 22, 2011, alleging disability as of June 1, 2011 due to psychosis, depression, anxiety, auditory hallucinations, migraines, chronic minor back pains, high blood pressure, possible thyroid issues, and a learning disability. Administrative Transcript ("T.") 66. Plaintiff's application was initially denied. T. 66-77. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Michael W. Devlin on November 1, 2012. T. 38-65. On February 20, 2013, ALJ Devlin issued an unfavorable decision. T. 20-37. On September 2, 2014, the Appeals Council denied Plaintiff's request for review. T. 1-6. Plaintiff instituted a civil action in this Court, and on October 15, 2015, this Court remanded the claim for further administrative proceedings. See Poles v. Colvin, Case No. 14-cv-6622, Docket No. 15.

On remand, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration and development. On September 29, 2016, Plaintiff appeared at a second hearing before ALJ Brian Kane. T. 976-1023. On January 20, 2017, ALJ Kane issued an unfavorable decision. T. 952-975. This action followed.

## III. The ALJ's Decision

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.

2

See 20 C.F.R. § 404.1520(a). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 957.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: bipolar disorder and osteoarthritis. Id. The ALJ also determined that Plaintiff's history of substance abuse, which was mostly in remission, was not material to a finding of disability (Id.), and that Plaintiff's medically determinable impairments of anemia, hypertension, uterine fibroids, and headaches were non-severe and created no significant work-related functional limitations. T. 958.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.02 and 1.04 regarding Plaintiff's condition of osteoarthritis, as well as the mental impairments listed in subsection 12.00. T. 958.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), except for the non-exertional limitations that she can have only infrequent interaction with co-workers and no interaction with the general public. T. 960.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a Cleaner, Housekeeping (Dictionary of Occupational Titles ("DOT") No. 323.687-014, unskilled, SVP 2, light exertional level). T. 966.

In the alternative, at step five, the ALJ relied on a vocational expert's testimony to find that a person with Plaintiff's age, education, past relevant work experience, and RFC could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: Photocopy Machine Operator (DOT No. 207.685-014, unskilled, VP 2, light exertional level); and Marker (DOT No. 209.587-034, unskilled, SVP 2, light exertional level). T. 967. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act, since the application date. T. 968.

## IV. Discussion

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, Tejada

v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff contends that remand is necessary because (1) the ALJ failed to evaluate Plaintiff's schizophrenia and intermittent explosive disorder at step two, (2) the ALJ failed to account for Plaintiff's limitations in dealing with supervisors in the assessed RFC, and (3) the ALJ failed to properly evaluate eight other source opinion statements from Plaintiff's mental health counselor. For the reasons discussed below, the Court finds these arguments without merit.

**B. The ALJ's Omission of Plaintiff's Schizophrenia and Intermittent Explosive Disorder at Step Two was Harmless Error**

Plaintiff argues the ALJ committed legal error at step two of the sequential analysis, because he did not consider whether Plaintiff's schizophrenia and intermittent explosive disorder were severe impairments. For the reasons discussed below, the Court agrees with the Commissioner that any error by the ALJ at step two was harmless.

5

At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." Rye v. Colvin, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. Id. at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment").

Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." Snyder v. Colvin, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be

6

non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." Snyder, 2014 WL 3107962 at *5.

In this case, although the only severe mental impairment identified by the ALJ at step two was bipolar disorder, the remainder of his decision makes it clear that his RFC assessment fully considered and factored in all of the limitations associated with Plaintiff's mental health conditions. In particular, the Court notes that the ALJ considered and gave significant weight to the opinion of Plaintiff's treating psychiatrist Dr. Anca Seger. Dr. Seger issued a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on July 20, 2016. T. 1900-1902. Dr. Seger expressly noted in her medical source statement that Plaintiff suffered from "poor impulse control" and "explosive behavior," but went on to state that she was "able to function fairly well when compliant with treatment." T. 1901. Dr. Seger opined that Plaintiff's mental impairments resulted in no limitations in her ability to understand, remember, and carry out instructions, mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and moderate limitations in her ability to interact appropriately with the public, her supervisors, and her co-workers.

7

T. 1901. As discussed further below, the ALJ's decision relies upon and is consistent with this opinion from Plaintiff's treating psychiatrist. Nothing in Dr. Seger's opinion suggests that Plaintiff has additional limitations from her mental impairments that are not fully accounted for therein. Plaintiff has therefore failed to demonstrate that the ALJ's omission of schizoprenia and intermittent explosive disorder at step two had any meaningful impact on the remainder of the ALJ's analysis, or that explicitly considering these impairments at step two would or could have resulted in a different outcome. Accordingly, the Court finds that any error by the ALK at step two was harmless and does not necessitate remand.

    C. **The ALJ Properly Accounted for Plaintiff's Social Limitations in his Decision**

Plaintiff's next argument is that remand is necessary because the ALJ erred in failing to include in his RFC finding a limitation in Plaintiff's ability to interact with supervisors. The Court finds no merit in this argument.

Plaintiff is correct that a when an ALJ adopts some portions of a medical opinion but rejects others, he must explain why he did not adopt the rejected portions. *See* Soc. Sec. Ruling 96-8p (1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); see also Labonte v. Berryhill, No. 16-CV-518-FPG, 2017 WL 1546477 at *3 (W.D.N.Y. May 1, 2017)) ("when an ALJ adopts only

8

portions of a medical opinion he or she must explain why the remaining portions were rejected"). In this case, the ALJ arguably failed to comply with this requirement, because he gave significant weight to the opinion of Plaintiff's treating psychiatrist, Dr. Seger, but did not expressly incorporate Dr. Seger's opinion that Plaintiff had a moderate limitation in her ability to interact appropriately with supervisors into his RFC finding.

Once again, however, the Court concludes that any error by the ALJ was harmless. As noted above, Dr. Seger opined only that Plaintiff had a moderate limitation in her ability to interact appropriately with supervision. See T. 1901. The VE in this case testified that a moderate limitation in the ability to interact appropriately with supervisors would <u>not</u> impact an individual's ability to perform unskilled work and specifically would not impact an individual's ability to perform the representative occupations identified by the VE. T. 1004-1006. In particular, the VE testified that even if an individual were capable of interacting with a supervisor for only 10 to 15 minutes at a time before having to remove themselves from the situation, that individual would still be able to perform unskilled work. T. 1006-1007. The VE explained that it is only when the inability to appropriately interact with supervision becomes frequent that it would render an individual unemployable. T. 1007. The VE's testimony establishes that, even had the ALJ expressly included a moderate limitation in

9

the ability to interact with supervision in his RFC finding, it would not have impacted his ultimate conclusion that Plaintiff was capable of performing her past relevant work as a cleaner, or that, in the alternative, Plaintiff was capable of working in the representative occupations of photocopy machine operation and marker, both of which are unskilled. T. 966-67.

"[W]here application of the correct legal principles to the record could lead [only to the same] conclusion," remand to the Commissioner is inappropriate. Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (quotation omitted and alterations in the original). Here, the express inclusion of a moderate limitation in Plaintiff's ability to interact with supervision in the RFC finding, which is all the medical evidence of record supports, would not have changed the outcome. Accordingly, the Court finds that remand is not required on this basis.

### D. The ALJ Properly Evaluated the Opinions of Plaintiff's Mental Health Counselor

Plaintiff's final argument is that the ALJ failed to properly evaluate the opinions of Licensed Mental Health Counselor ("LMHC") Charlene Reeves, who counseled Plaintiff beginning in December 2012. The Court finds no error in the ALJ's consideration of LMHC Reeves' opinions.

LMHC Reeves completed eight medical opinions for Monroe County Department of Human Services' employability program between January

2013 and March 2016. T. 1908-1946. The opinion format for employability determination was limited to checking a box for the functional limitation level that was observed at the time of the assessment. The box selection included "Normal functioning - No evidence of limitation"; "Moderately limited - Unable to function 10-25% of the time"; "Very limited - Unable to function 25% or more of the time"; and "Insufficient Data". T. 1908.

The majority of LMHC Reeves' opinions rated Plaintiff's ability to follow, understand, and remember simple instructions and directions as "normal functioning" or "moderately limited". T. 1908-1946. LMHC Reeves also rated Plaintiff as "normal functioning" or "moderately limited" in a majority of the opinions for Plaintiff's capacity to perform simple and complex tasks independently, as well as her capacity to perform low stress and simple tasks. Plaintiff's capacity to maintain attention and concentrate for role tasks and her capacity to regularly attend to a routine and maintain a schedule were rated as "very limited" on half of the opinions. Id.

In his decision, the ALJ gave limited weight to LMHC Reeves' opinions. He noted that the opinions were in parts inconsistent with corresponding treatment notes, which reflected only "mild difficulties in the area[s] of concentration, persistence and pace." T. 965. The ALJ further explained that corresponding treatment notes indicated that Plaintiff had improved with

11

treatment and that she was stable when properly medicated, but that the opinions did not reflect these findings. Id. The ALJ also noted that LMHC Reeves' opinions had been rendered in connection with a Department of Human Services employability program, and that the administrative conclusions set forth therein were not relevant to the social security context. T. 966.

As a threshold matter, the Court notes that the ALJ did not outright reject LMHC Reeves' opinions, but did in fact afford them some limited weight. Indeed, the ALJ's RFC finding is in many ways consistent with LMHC Reeves' opinions. For example, in March 2016, LMHC Reeves opined that Plaintiff would have no limitations in her ability to: follow, understand, and remember simple instructions and directions; perform simple and complex tasks independently; maintain basic standards of hygiene and grooming; and perform low stress and simple tasks. T. 1936. LMHC Reeves further opined that Plaintiff would have only moderate limitations in her ability to maintain attention and concentration for role tasks and to regularly attend to a routine and maintain a schedule. Id. LMHC Reeves indicated that she believed Plaintiff was capable of working for up to 20 hours per week. Id. The relatively mild limitations assessed by LMHC Reeves are largely accounted for in the ALJ's conclusions, because, as the VE testified to, an individual who is able to understand, remember, and carry out simple functions, and who can maintain concentration and focus for up to two hours at a

12

time, is capable of performing Plaintiff's past relevant work as a cleaner. See T. 1003.

The Court further notes that in July 2016, LMHC Reeves completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (T. 1903-1905) that is essentially identical to the medical source statement completed by Dr. Seger. In her July 2016 medical source statement, LMHC Reeves opined that Plaintiff had no limitations in her ability to understand, remember, and carry out instructions, mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and moderate limitations in her ability to interact appropriately with the public, her supervisors, and her co-workers. T. 1903-1904. Moreover, and like Dr. Seger, LMHC Reeves opined that Plaintiff's "[i]nterpersonal skills" and "poor impulse control" were issues "if [Plaintiff] is not taking medications on a regular basis." T. 1904. As discussed at length above, the ALJ's decision in this case is consistent with this opinion.

Moreover, to the extent the ALJ's conclusions are inconsistent with LMHC Reeves' earlier opinions, the ALJ adequately explained the reasons why. Mental health counselors are "not an acceptable treating source as defined by the Commissioner." Esteves v. Barnhart, 492 F. Supp. 2d 275, 281 (W.D.N.Y. 2007). As such, they are considered "'other sources' whose opinions can be considered to evaluate the severity of [an] impairment[] and how it affects [a

13

claimant's] ability to work." Acevedo v. Astrue, No. 11 CIV. 8853 JMF JLC, 2012 WL 4377323, at *11 (S.D.N.Y. Sept. 4, 2012) (quotation omitted and alterations in original). An ALJ may reject the opinion of a mental health counselor where it is inconsistent with the claimant's treatment records. Bulavinetz v. Astrue, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009).

The ALJ appropriately found that LMHC Reeves' opinions were inconsistent with corresponding treatment notes from Plaintiff's treating psychiatrist, Dr. Seger. On April 23, 2015, Plaintiff was evaluated by both LMHC Reeves and Dr. Seger. LMHC Reeves' opinion listed Plaintiff's capacity to maintain attention and concentration for role tasks as Very Limited. T. 1928. However, Dr. Seger's exam report from the very same day notes that Plaintiff was "alert and oriented x3, [had] good attention and concentration and good use of memory." T. 1435. Further inconsistencies include an opinion from LMHC Reeves dated January 18, 2013 in which she rates Plaintiff as "moderately limited" in all functional areas but notes "I have only seen Kimberly [two] times. I am unable to determine whether she can work or go to school for any amounts of time at this time." T. 1941. However, an outpatient progress note completed by LMHC Reeves for the same date indicates that Plaintiff was ill and the therapist rescheduled her appointment for January 25, 2013. T. 1373. These sorts of inconsistencies are an appropriate basis for the ALJ to afford limited weight to the opinions of a mental

14

health counselor.

For the foregoing reasons, the Court does not find that the ALJ erred in his consideration of LMHC Reeves' opinions. Accordingly, remand is not warranted on this basis.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 12) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          **S/Michael A. Telesca**

                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    March 26, 2018
           Rochester, New York.